IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LASHAWN BROWN** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 20-5624** |
| **v.** | : | |
| | : | |
| **UNITED STATES POSTAL SERVICE** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 NOVEMBER 2, 2021

# MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is a joint motion for approval of the parties' Settlement Agreement, [ECF 21], with respect to claims brought by Plaintiff Lashawn Brown ("Plaintiff") against Defendant United States Postal Service ("Defendant" or "USPS") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* For the reasons set forth herein, the joint motion is granted, and the Settlement Agreement is approved.

**BACKGROUND**

In her operative amended complaint, [ECF 9], Plaintiff avers that she was employed by Defendant as an Assistant Rural Carrier from October 7, 2017, until August 19, 2018, and as a City Carrier Assistant from August 20, 2018, until her termination on November 19, 2018. Plaintiff further alleges that Defendant violated the FLSA by failing to properly compensate her for all of the hours she worked, including overtime hours, and that, during a period of transition between two work locations, she was not fully compensated for her work in the new location. She also alleges that Defendant violated the FMLA when it retaliated against her by terminating her employment after she took a medical leave. Finally, Plaintiff alleges that Defendant's conduct

was willful.  In its answer to the complaint, Defendant denied Plaintiff's allegations and asserted five affirmative defenses.  [ECF 16].  Defendant maintains that all of its actions were taken in good faith and with reasonable belief that it was in compliance with the FLSA and the FMLA.

Following the close of discovery, the parties conferred and reached an amicable resolution of the disputed claims, memorialized in a settlement agreement (the "Settlement Agreement").  [ECF 18-1].  Pursuant to the Settlement Agreement, Defendant has agreed to pay Plaintiff a total of $4,250.00, consisting of $1,500 in unpaid earned wages, $1,500 in liquidated damages, and $1,250 in attorney's fees.  In exchange, Plaintiff has agreed to dismiss the instant litigation and to the release of any and all claims she has or may have against Defendant, the United States of America, and its officers, agents, and employees, arising from her previous employment with Defendant.  The parties now seek this Court's approval of the proposed Settlement Agreement.

**DISCUSSION**

Although the United States Court of Appeals for the Third Circuit ("Third Circuit") has yet to address the issue, district courts in this Circuit have followed the position taken by the United States Court of Appeals for the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States Department of Labor*, 679 F.2d 1350 (11th Cir. 1982), holding that court approval is required for proposed settlements in a FLSA lawsuit filed pursuant to 29 U.S.C. § 216(b).[1]  Judicial review of a proposed settlement agreement requires the court to scrutinize the proposed agreement and determine if it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355.  "A proposed settlement agreement resolves a bona fide

---

[1] *See also, e.g., Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464 (E.D. Pa. 2012); *Morales v. PepsiCo, Inc.*, 2012 WL 870752 (D.N.J. Mar. 14, 2012); *Bettger v. Crossmark, Inc.*, 2015 WL 279754 (M.D. Pa. Jan. 22, 2015).

dispute if it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute' and is not a 'mere waiver of statutory rights brought about by an employer's overreaching.'" *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014) (quoting *Lynn's Food Stores*, 679 F.2d at 1354). Judicial review also requires a determination of whether the settlement agreement furthers or "impermissibly frustrates" implementation of the FLSA in the workplace. *Lyons v. Gerhard's Inc.*, 2015 WL 4378514, at *3 (E.D. Pa. July 16, 2015) (citations omitted).

Having reviewed the parties' proposed Settlement Agreement, for the reasons that follow, this Court is satisfied that it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" and does not impermissibly frustrate implementation of the FLSA in the workplace.

***Proposed Settlement Agreement is a Fair and Reasonable Settlement of a Bona Fide Dispute***

As a threshold issue, this Court must determine whether the parties' dispute is "bona fide." "A dispute is 'bona fide' where it involves factual issues rather than legal issues such as the statute's coverage and applicability." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016). "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Id.*; *see also Berger v. Bell-Mark Techs. Corp.*, 2019 WL 1922325, at *3 (M.D. Pa. Apr. 30, 2019) ("A bona fide dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial.").

Here, this Court is satisfied that a bona fide dispute exists as to both Defendant's liability and Plaintiff's damages under the FLSA. As evidenced by the operative complaint and Defendant's answer and affirmative defenses, this action involves disputed issues of fact as to whether Defendant properly paid Plaintiff at least the minimum wage for all of the regular and

overtime hours she worked. Based on the pleadings, it is clear that a bona fide dispute exists regarding the validity of Plaintiff's claims and Defendant's defenses thereto.

Having determined that a bona fide dispute exists, this Court must determine whether the proposed Settlement Agreement provides a fair and reasonable resolution of that dispute. When determining whether a proposed settlement is fair and reasonable, courts in the Third Circuit often consider the *Girsh* factors, a nine-factor test created for evaluating proposed class action settlement agreements. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Lyons*, 2015 WL 4378514, at *4. The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendant to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009) (citing *Girsh*, 521 F.2d at 157). No one factor, however, is dispositive. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 169 (E.D. Pa. 2011). Because *Girsh* was a class action, some of the factors are of "little help, if not irrelevant in the single-plaintiff context." *Howard v. Phila. Housing Auth.*, 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016). This Court finds that the *Girsh* factors 1, 3–5, and 8–9 are relevant to this single-plaintiff action and that they weigh in favor of approval of the proposed Settlement Agreement.

*Relevant Girsh Factors*

*Factor 1: The complexity, expense, and likely duration of the litigation*

Had the settlement not been reached, this matter would have proceeded to trial to determine the merits of Plaintiff's claims and Defendant's liability and damages, if any. The continued litigation of Plaintiff's claims would have required significant additional expense and a substantial delay before any potential recovery. Further, no matter the outcome of a trial, either one or both parties may have filed an appeal, leading to further litigation costs and delay in any realized recovery. Thus, the avoidance of the unnecessary expenditure of time and resources benefits the parties and weighs in favor of approving the proposed settlement. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Lit.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and potential opposition by the defendant weigh in favor of approving settlement).

*Factor 3: The stage of the proceedings and the amount of discovery completed*

The third *Girsh* factor "captures the degree of case development that . . . counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). When evaluating the third *Girsh* factor, courts must evaluate the procedural stage of the case at the time the proposed settlement was made to assess whether counsel adequately appreciated the merits of the case while negotiating. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "[C]ourts generally recognize that a proposed . . . settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144–45 (E.D. Pa. 2000). Settlements reached following discovery "are more likely to reflect the true value of the

claim." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993)).

Notably, this case has been actively litigated for almost a year. Prior to reaching a settlement, the parties participated in discovery for about six months. [*See* ECF 8, 13]. As a result of that discovery, the parties had ample opportunity to identify and grasp the strengths and weaknesses of each party's case. Consequently, this Court finds that this factor weighs in favor of approval.

*Factor 4:  The risks of establishing liability*

This *Girsh* factor weighs the likelihood of ultimate success against the benefits of an immediate settlement. The existence of obstacles, if any, to a plaintiff's success at trial weighs in favor of settlement. *In re Warfarin*, 391 F.3d at 537.

Here, Defendant "vigorously" denies liability and disputes many of the factual allegations critical to Plaintiff's claims. If this case were to proceed to trial, it is possible that Plaintiff may not be able to establish Defendant's liability and, therefore, obtain no recovery. The proposed settlement avoids the risk that Defendant may not be found liable. Thus, this Court finds that this factor weighs in favor of approval.

*Factor 5:  The risks of establishing damages*

This factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238–39. As with the fourth factor, the proposed settlement will allow Plaintiff to obtain prompt financial relief. Were this case to proceed to trial, it is possible that Plaintiff may fail to establish any damages, may establish damages in an amount less than the amount she will recover by way of the settlement, or may establish liability only to have the judgment appealed. In light of this uncertainty regarding damages, the proposed

settlement amount, which is more than what Plaintiff claims to be owed, is a positive result. Accordingly, this factor weighs in favor of approval.

*Factors 8–9: The range of reasonableness of settlement in light of best and possible recovery and all attendant risks of litigation*

Often considered together, the last two *Girsh* factors evaluate whether the settlement agreement represents a good value for a weak case or a poor value for a strong case. *In re Warfarin*, 391 F.3d at 538. In order to assess the reasonableness of a settlement in cases seeking monetary relief, "the present value of the damages plaintiff[] would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *In re Prudential Ins. Co. Am. Sale Practice Litig. Agent Actions*, 148 F.3d 283, 322 (3d Cir. 1998).

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief. As noted, Plaintiff's recovery under the proposed Settlement Agreement is a total amount of $4,250.00 in compensatory and liquidated damages, an amount greater than what Plaintiff claims to be owed, and which also includes attorney's fees. Plaintiff's counsel has calculated that Plaintiff believes she is owed between $1,033.86 and $1,612.72. The $4,250 settlement amount is reasonable in light of the attendant risk that Plaintiff may obtain less than this amount or may not obtain any recovery if this case proceeded through trial. Thus, these factors weigh in favor of approval.

Thus, in light of the presumption of fairness that attaches to the settlement, *see In re Warfarin*, 391 F.3d at 539, and upon consideration of each of the *Girsh* factors mentioned, this Court finds that the parties' proposed Settlement Agreement is fair and reasonable.

### *The Proposed Settlement Agreement Does Not Impermissibly Frustrate Implementation of the FLSA*

This Court further finds that the proposed Settlement Agreement does not impermissibly frustrate implementation of the FLSA in the workplace. In reaching this conclusion, this Court has examined the release of claims in the proposed Settlement Agreement and the absence of any confidentiality provision, a feature of some FLSA settlement agreements of which courts have repeatedly disapproved. *See Stickel v. SMP Servs. LLC*, 2016 WL 827126, at *2 (M.D. Pa. Mar. 1, 2016) (finding that a FLSA settlement's confidentiality provision impermissibly frustrated implementation of the FLSA); *Brumley v. Camin Cargo Control, Inc.*, 2012 WL 300583, at *3 (D.N.J. Feb. 1, 2012) (collecting cases).

Here, the release of claims is limited to claims related to Plaintiff's employment with Defendant arising before the date of the proposed Settlement Agreement. Such a narrowly tailored release does not frustrate implementation of the FLSA. *See Bettger v. Crossmark, Inc.*, 2015 WL 279754, at *8 (M.D. Pa. Jan. 22, 2015) (collecting cases approving FLSA settlements where release limited to "claims related to the specific litigation"); *Kutz v. Cargill Cocoa & Chocolate, Inc.*, 2019 WL 5457776, at *8 (M.D. Pa. Oct. 23, 2019) (approving an agreement "limited to the release and discharge of claims asserted in the lawsuit or claims that could have been asserted in the lawsuit"). Similarly, the release in this case is sufficiently limited in scope so as to not impermissibly frustrate implementation of the FLSA.

### *Request for Attorney's Fees and Expenses*

As compensation for their legal services and efforts, the proposed Settlement Agreement provides for reimbursement of attorney's fees in the amount of $1,250. This amount represents 29.4% of the total settlement amount. This Court finds this award of attorney's fees to be reasonable.

Section 16(b) of the FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). Courts generally use either the percentage-of-recovery approach or the lodestar scheme to evaluate the reasonableness of an award of attorney's fees. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 330 (3d Cir. 2011). Under the lodestar method, a court begins the process of determining the reasonable fee by calculating the "lodestar;" *i.e.*, the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). Once the lodestar is determined, the court must then determine whether additional adjustments are appropriate. *McKenna*, 582 F.3d at 455.

A reasonable hourly rate in the lodestar calculation is "[g]enerally . . . calculated according to the prevailing market rates in the relevant community," taking into account "the experience and skill of the . . . attorney and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The prevailing market rate is usually deemed reasonable. *Pub. Interest Rsch. Grp. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

As revealed in the affidavit submitted by Seth Lyons (the "Lyons Affidavit"), the hourly rates for Plaintiff's Community Legal Services counsel are well within the range of what is reasonable and appropriate in this market. That is, the hourly charged rates for the attorneys are the same as the regular, current rates charged for their services in standard matters. Both Seth Lyons and Elizabeth Soltan have significant experience in FLSA cases, and their hourly rates of $275 and $220, respectively, are established in accordance with each attorney's time spent in legal practice. This Court, thus, finds the hourly rates to be reasonable.

"In calculating the second part of the lodestar determination, the *time* reasonably expended," a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Pa. Env't Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998). As noted in *Hensley*, lawyers are required to use judgment when billing their clients so as not to bill clients for "excessive, redundant, or otherwise unnecessary" hours. *Id.* Likewise, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (citations omitted). Ultimately, district courts have "substantial discretion in determining what constitutes . . . reasonable hours." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).

The Lyons Affidavit includes a summary of the hours diligently worked by the counsel in this litigation. The summaries were prepared from contemporaneous, daily time records regularly prepared and maintained by the law firm. Plaintiff's counsel reports 114.1 hours spent working on this litigation. From the Lyons Affidavit and supporting documentation, it appears that Plaintiff's counsel is not requesting compensation for any time that was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Having found the hourly rates and hours expended reasonable, this Court determines that the lodestar for Plaintiff's counsel is $28,766. Counsel's request for $1,250 represents an amount significantly less than the lodestar. Clearly, such an amount does not exceed other attorney's fees awards which amounted to various multiples above the lodestar amount. *See, e.g.*, *Mabry v. Hildebrandt*, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) ("In this Circuit, the percentage of recovery award in FLSA common fund cases ranges from roughly 20–45%."); *In re Prudential*, 148 F.3d at 341; *see also Keller v. TD Bank, N.A.*, 2014 WL 5591033, at *16 (E.D. Pa. Nov. 4,

2014) (approving multiplier of "slightly above 3" in FLSA collective action). Therefore, the lodestar method supports approval of the requested attorney's fees.

Having considered the relevant factors and the lodestar analysis, this Court approves the reasonable request for attorney's fees.

**CONCLUSION**

For the reasons stated herein, this Court finds the terms if the proposed Settlement Agreement to be fair and reasonable and consistent with implementation of the FLSA, and, therefore, approves the Settlement Agreement. This Court further finds that the request for attorney's fees is reasonable and awards Plaintiff's counsel fees in the amount of $1,250. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.